TUCKER, J., concurring:
{¶ 76} I concur in the well-reasoned, comprehensive majority opinion. I write separately to explain my thoughts concerning why the arbitrator's decision, though, in my opinion, flawed, involves a necessary CBA interpretation, with this conclusion leading to the ultimate conclusion that the arbitrator did not exceed his authority.
{¶ 77} This determination is difficult because the arbitrator concluded, and, on appeal, the DEA agrees, that the Board's conduction of the dependent verification audit was, under R.C. 4117.08(C) and the CBA, a reserved right. The Board, from this, asserts that the audit's conduction is outside the scope of the CBA's grievance process. This, quite frankly, is a logical, reasonable contractual interpretation, and if the arbitrator had reached this conclusion, any attempt by the DEA to vacate such a determination would have been futile. This is so because the suggested result would have involved an interpretation of the CBA, the parties have agreed to submit contractual interpretation issues to binding arbitration, and the suggested arbitration decision, "whether * * * correct or not," would have been within the arbitrator's authority. Internatl. Assn. of Firefighters, Local 136 , 2d Dist. Montgomery No. 27600, 2018-Ohio-2746, ¶ 16.
{¶ 78} The question, therefore, is whether the arbitrator's actual, contrary determination involved a required interpretation of the CBA. If it did, the arbitrator, irrespective of the merits of the decision, did not exceed his authority and the arbitration award is not subject to vacation under R.C. 2711.10(D).
{¶ 79} The first question addressed is whether the arbitrator's decision represents a contractual interpretation as opposed to the arbitrator, out of whole cloth, simply imposing his own "brand of industrial justice." Ohio Office of Collective Bargaining v. Ohio Civ. Serv. Emps. Assn., Local 11, AFSCME , 59 Ohio St.3d 177, 180, 572 N.E.2d 71 (1991). A review of the arbitrator's decision indicates that he engaged in an interpretation of the CBA. The arbitration decision states that the Board's management right to conduct the audit "is governed somewhat by Article 49." The arbitrator, from this, concluded that Article 49 acted as a governor on the Board's right to conduct the audit so that the audit could not be conducted in an "arbitrary, capricious, discriminatory, unconscionable, or clearly unreasonable" fashion.
{¶ 80} The arbitrator, in short, interpreted the intersection between the Board's right to conduct the audit and the Article 49 bargained-for health insurance *265 benefits. The arbitrator's interpretation may be strained, with it being particularly distressing that the arbitrator, after finding that the audit's "procedures and requirements [were] not unreasonable on their face[,]" conducted an examination of the individual claims. The arbitrator, nonetheless, did conduct an interpretation of the CBA.
{¶ 81} The next, and final, question is whether the arbitrator's CBA interpretation was required. The Board argues that since the audit was within its reserved rights, no CBA interpretation was necessary. This argument, however, ignores the fact that the DEA's grievance required the arbitrator to determine how, if at all, Article 49 affected the Board's management right to conduct the audit.
{¶ 82} Since the arbitrator, in order to resolve the DEA's grievance, had to interpret the interplay between the Board's right to conduct the audit and the bargained-for health insurance benefits, the arbitrator necessarily engaged in an interpretation of the CBA. Thus, the arbitrator, irrespective of the merits of his decision, did not exceed the authority the CBA granted to him, making vacation of the decision under R.C. 2711.10(D) inappropriate.